IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARCUS MCCANTS, as Personal         :
Representative and Administrator    :
of the Estate of                    :
Karey Pettway, deceased, *et al.*,  :
                                    :
    Plaintiffs,                   :
                                    :
vs.                                 :   Civil Action No. 1:18-cv-00062-CG-C
                                    :
BASF CORPORATION, *et al.*,         :
                                    :
    Defendants.                   :

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Plaintiffs Marcus and Latoya McCants' Motion to Remand or in the Alternative to Conduct Limited Discovery Related to Subject Matter Jurisdiction ("Motion to Remand"), (Doc. 15), Defendant Jason Slinkard's Motion to Dismiss, (Doc. 4), and Remedial Services, Inc.'s ("RSI") Motion to Dismiss for Fraudulent Joinder, (Doc. 8).  Upon consideration of the parties' pleadings, (Docs. 4, 8, 15-19, 22, & 27), and after hearing oral arguments, it is recommended that the Plaintiffs' Motion to Remand be **DENIED**, Defendant Slinkard's Motion to Dismiss, (Doc. 4), be **GRANTED,** and RSI's Motion to Dismiss for Fraudulent Joinder, (Doc. 8), be **GRANTED.**

## BACKGROUND

This case arises from fatal injuries that were sustained by the decedent, Karey Pettway, while he performed demolition work as a contractor for RSI at BASF's chemical plant in McIntosh, Alabama. (Doc. 1, at 19.)  Plaintiffs Marcus McCants and Latoya McCants filed this lawsuit in the Mobile County Circuit Court and asserted claims against BASF and its employee, Jason Slinkard, for negligence and wantonness and a claim against RSI for workers' compensation. (Doc. 1, at 20–23).  Plaintiffs allege BASF and Slinkard negligently and wantonly caused the decedent's fatal injuries and subsequent death. (Doc. 1, at 20–22).  Plaintiff Marcus McCants is seeking damages, as Personal Representative and Administrator for the Estate.  (Doc. 1, at 21–22).  Plaintiff Latoya McCants alleges she is entitled to workers' compensation benefits as a partial dependent of the decedent from his employer, RSI, and is seeking compensatory damages, medical expenses, and other damages that she claims she is entitled to under the workers' compensation laws of Alabama.  (Doc. 1, at 22–23).

In Plaintiffs' Complaint, they name BASF and Slinkard, a resident defendant, as well as numerous fictitious parties identified as the person(s), firm(s), or corporation(s) who designed, manufactured, assembled, tested, inspected, installed, serviced, maintained, operated, and/or controlled the industrial plant and/or machinery, and their principals, masters, or employers; the person(s), firm(s) or corporation(s) who negligently and/or wantonly trained, educated, supervised, and/or monitored the aforementioned parties; as well as the person(s), firm(s), or

corporation(s) responsible for and who did, in fact, assist or contribute in any way to the tortious conduct described in the Complaint.  (Doc. 1, at 17).

On February 8, 2018, BASF timely removed this action to federal court under 28 U.S.C. § 1441 and 1446.  (Doc. 1.)  BASF alleges this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the properly-joined parties are diverse and the amount in controversy exceeds jurisdictional requirements.  (Doc. 1, at 2–3).  BASF, a citizen of Delaware and New Jersey, argues, in sum, the citizenship of resident defendants Jason Slinkard and RSI should be disregarded for purposes of removal because those parties were fraudulently joined in this action to defeat diversity jurisdiction.  (Doc. 1, at 3 & 7).

Plaintiffs moved to remand and argued BASF did not show the parties are completely diverse.  (Docs. 15 & 16).  Although the Court considered authorizing limited jurisdictional discovery as requested by the Plaintiffs, that request was abandoned after both Plaintiffs and BASF objected to the idea.  (Doc. 34).  The motion has been fully briefed and is, now, ready for the Court's consideration.

## STANDARD OF REVIEW

> An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. *See Lincoln Prop. Co. v. Roche*, [546 U.S. 81] (2005) (*citing* 28 U.S.C. § 1441(b)). Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.
> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have

3

> effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id*. The defendant must make such a showing by clear and convincing evidence. *See Parks v. New York Times Co.*, 308 F .2d 474, 478 (5th Cir. 1962).

*Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The burden of proving fraudulent joinder is a heavy one that requires the court to evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The court must make "these determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." *Id.*

"The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56." *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005) (citations omitted). In making this determination, the Court considers "the plaintiff's pleadings at the time of removal, *supplemented by any affidavits . . . submitted by the parties.*" *Id.* (emphasis in original) (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)). But, even so, "the jurisdictional inquiry 'must not subsume substantive determination.'" *Crowe*, 113 F.3d at 1538 (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548-49 (5th Cir. Unit A 1981)). "When

4

considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citing *B, Inc.*, 663 F.2d at 548-49); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)).

## ANALYSIS

### Plaintiffs' Motion to Remand and Defendant Slinkard's Motion to Dismiss

Although Slinkard and Plaintiffs are all citizens of Alabama, BASF argues the Court should disregard Slinkard's citizenship because he is fraudulently joined. Plaintiffs assert BASF "altogether failed to meet [the] 'heavy' burden" of showing by clear and convincing evidence there is no possibility the plaintiff can establish a cause of action against the resident defendant, Slinkard. (Doc. 15, at 2).

> The issue of the responsibility of a premises owner for the negligence of its contractor that injures another is an altogether different issue than the issue of a premises owner's *duty to the contractor* (and by extension its employees) to warn or protect against *preexisting conditions of the premises* into which the premises owner invites the contractor.

*S. Ala. Brick Co., Inc. v. Carwie*, 214 So. 3d 1169, 1180 (Ala. 2016).

> [I]n the former category, the law provides that it is the independent contractor in such cases, not the premises owner, who bears responsibility for the employee's injury where the premises owner has not retained control over the manner in which the contractor performs its work.

5

> "Generally, the owner of premises . . . owes no duty to the employees of an independent contractor with respect to conditions arising in the progress of work on the contract. *Hughes v. Hughes*, 367 So. 2d 1384 (Ala. 1979). The test for whether such an owner will be viewed as a prime contractor is whether the owner reserved the right of control over the contractor's work . . . .
>
> "More specifically, the issue presented here is whether [the defendant] retained the right to direct the manner in which [the contractor] performed its work."
>
> *Pate v.* [*U.S.*] *Steel Corp.*, 393 So. 2d 992, 994 (Ala. 1981)[; *see*] *also Armstrong* [*v. Ga. Marble Co.*], 575 So. 2d [1051,] 1053 [(Ala. 1991)] ("Because Georgia Marble Company did not retain any control over the work to be done, the relationship between Georgia Marble Company and Armstrong was not that of a master and a servant. Their relationship was that of an owner of premises and a business invitee.") *Weeks v. Ala. Elec. Coop., Inc.*, 419 So. 2d 1381, 1383 (Ala. 1982) ("[A] premises owner owes no duty of care to employees of an independent contractor with respect to working conditions arising during the progress of the work on the contract.").

*Carwie*, 214 So. 3d at 1180 n.12.

By contrast to the responsibility of a premises owner for the negligence of its contractor that injures another, "[a] premises owner's legal duty to a party injured by a condition of the premises depends upon the legal status of the injured party." *Carwie*, 214 So. 3d at 1175. In this case, McCants was on BASF's premises to confer a material or commercial benefit to BASF, and, therefore, the relationship between BASF, the premises owner, and McCants is that of invitor/invitee. *See id.* ("In this case, Benito Perez was on SAB's premises to confer a material or commercial benefit to SAB. Accordingly, the relationship between SAB, the premises owner, and Benito Perez, a roofer, is that of invitor/invitee." (citation omitted)).

Alabama law is well-settled regarding the scope of the duty an invitor owes a business invitee. "The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give *sufficient warning so that, by the use of ordinary care, the danger can be avoided.*" *Armstrong v. Ga. Marble Co.*, 575 SO. 2d 1051, 1053 (Ala. 1991) (emphasis added). [The Alabama Supreme Court has] said that a premises owner's duty to warn extends only to "hidden defects and dangers that are known to [the premises owner], but that are unknown or hidden to the invitee." *Raspilair v. Bruno's Food Stores, Inc.*, 514 So. 2d 1022, 1024 (Ala. 1987). More specifically, we have explained that a plaintiff must establish "'(1) that the defect or danger was "hidden"; (2) that it was "known to the owner"; and (3) that it was "neither known to the contractor, *nor such as he ought to know*."'" *Roberts v. NASCO Equip. Co.*, 986 So. 2d 379, 384 (Ala. 2007) [(citations omitted]).

> "In discussing a premises owner's liability towards an independent contractor, this Court has recognized that an "'owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or *ought to know of*.'""

[*Roberts*,] 986 So. 2d at 383 [(citations omitted)].

[The Alabama Supreme Court] has elaborated on the nature of a premises owner's duty to a business invitee as follows:

> """The duty to keep an area safe for invitees is limited to hidden defects which are not known to the invitee and would not be *discovered by him in the exercise of ordinary care*. All ordinary risks present are assumed by the invitee, and the [invitor] is not liable to an invitee for an injury resulting from a danger that was obvious or that *should have been observed in the exercise of reasonable care*.""""

*Jones Food Co. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006) [(citations omitted)]. . . . [T]he Court in *Jones Food* then stated:

> """*The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries*. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be liable.""""

7

[*Jones*,] 981 So. 2d at 362 [(citations omitted)]. And as to an independent contractor in particular, [the Alabama Supreme Court has] explained: "*"There is no duty to warn" . . . an independent contractor "who has equal or superior knowledge of a potential danger."* *Roberts*, 986 So. 2d at 383-84 [(citations omitted)]

In *Gray v. Mobile Greyhound Park, Ltd.*, 370 So. 2d 1384 (Ala. 1979), [the Alabama Supreme Court] took note of these same fundamental precepts as set out in *Corpus Juris Secundum*, to explain what the Court referred to as the "no-duty" rule applicable to a premises owner that lacks "superior knowledge" of a danger:

> "Th[e] absence of duty is commonly referred to as the 'no duty' rule and has been thoroughly discussed in 65 C.J.S. *Negligence* § 63(53), at pages 764-68, as follows:
>
> . . .
>
> "'*The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger*, and, as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or *should have been observed by the invitee in the exercise of reasonable care*, or from a condition which was as well known or as obvious to the invitee as to the invite, or from a danger which the invitee should reasonably have appreciated before exposing himself to it, or which the invite had no reason to believe would not be discovered by the invitee.'"

[*Gray*,] 370 So. 2d at 1388 (emphasis added); . . . .

As indicated by the "ought to know" and "should have known" aspects of the standard quoted above, the duty of a premises owner is measured by an objective standard, not the subjective state of the invitee's knowledge. The question is what was objectively reasonable for the invitor to expect the invitee to know. "As discussed in *Sessions* [*v. Nonnenmann*, 842 So. 2d 649 (Ala. 2002)], the question is whether the danger should have been observed, not whether in fact it was consciously appreciated . . . ." *Jones Food*, 981 So. 2d at 362. And as [the Alabama Supreme Court] explained in *Sessions*, 842 So. 2d at 653-54, an invitor's duty before an accident is not determined by "the invitee's subjective state of mind" at the moment of the accident.

8

*Carwie*, 214 So. 3d at 1176-77.

In this case, Slinkard is the Site Director at the BASF plant where the events of this action occurred and is not the premises owner. (Doc. 1, at 121, ¶ 3). The undisputed fact is the allegedly dangerous condition was created during the course of RSI's demolition of the formulations building. (*See* Doc. 1, at 123, ¶ 13 ("My understanding is that RSI employees had cut nine of ten steel beams holding the formulations building up and Mr. Pettway was cutting the final tenth beam-from inside of the formulations building-when the final beam buckled and the structure fell on him.")).

However, Plaintiffs argue that, as "the person chiefly in charge" of the BASF facility, it would "not take a great deal of imagination" to "[e]nvision[] scenarios by which [Slinkard] . . . could be found liable for any of the . . . failures . . . alleged by Plaintiffs in the Complaint." (Doc. 16 at 10). But in removing this case and opposing Plaintiffs' motion to remand, Slinkard submitted a declaration (the "Slinkard Declaration"), which Plaintiffs have not disputed, that attests to the following:

- RSI provided the expertise, supervision, labor, equipment, transportation, and disposal services for the demolition of the formulations building where the decedent's accident occurred pursuant to a contractual arrangement. (Doc. 1 at 121, ¶ 5.)
- Slinkard had no responsibility for the agreement between BASF and RSI. Nor did he oversee RSI's work under that agreement. (*Id*. at 122, ¶ 6.)
- The work in connection with the demolition project was done by RSI employees, under the direct supervision of an RSI supervisor. Slinkard had no role in selecting the individuals that RSI sent to perform the demolition work. (*Id*. at 122–23, ¶¶ 8, 14.)

9

- Slinkard did not know where the decedent was positioned while performing the demolitions work that led to his accident. Slinkard himself was in Detroit, Michigan, that day. (*Id.* at 122–23, ¶¶ 7, 13.)

- Slinkard did not participate in any way whatsoever in determining how the formulations building would be demolished, what equipment would be used to demolish it, or the tasks that RSI employees would undertake to complete the demolitions project. Indeed, BASF retained independent third-party contractor RSI to perform this work *because* it had this expertise. (*Id.* at 122, ¶ 9.)

- The working conditions of the demolition project that led to the decedent's death arose during the progress of RSI's contracted-for work. (*Id.* at 123, ¶ 15.)

- Slinkard did not know the decedent; he never trained or supervised the decedent; or, to his knowledge, ever spoke with the decedent. (*Id.* at 122, ¶¶ 10, 11, 12.)

In short, the Slinkard Declaration shows Slinkard had no safety responsibilities or supervisory role at the McIntosh Plant with respect to the work being performed by RSI, played no role in selecting RSI as the third-party contractor responsible for the work, and exercised no control over the course of the work before or after RSI was engaged. Plaintiffs point to Slinkard's job as "Site Manager" for the McIntosh Plant, but whether Slinkard was "in charge" of the McIntosh Plant is irrelevant. It is undisputed here he was not in charge (or otherwise involved with) the demolition of the formulations building (*i.e.*, the actual premises at issue), which was under RSI's control as the designated job site.

Plaintiffs do not dispute the Slinkard Declaration, thus the Court cannot resolve any factual disputes in their favor. *See Legg*, 428 F.3d at 1323 ("[T]here must be some question of fact before the district court can resolve that fact in the plaintiff's favor."). Nor can the Court presume some evidence to the contrary may

10

arise later. *Id.* ("We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393–94 (5th Cir. 2000))).

Instead, rather than dispute the Slinkard Declaration, Plaintiffs argue it goes to the merits and should not control the fraudulent joinder analysis. This Court does not agree, and finds this Court's decision in *Sellers v. Bolttech Mannings, Inc.*, dispositive of the question. 2013 WL 2635564 (S.D. Ala. June 11, 2013) (Granade, J.), *adopting report and recommendation*. There, the plaintiff was a shipyard worker who had been electrocuted when he touched a heat console provided to his employer by Bolttech hours before his accident. *Id.* at *1. The plaintiff sued Bolttech and its non-diverse employee, Allan Long. *Id.* at *1–2. Bolttech removed based on diversity of citizenship and asserted Long was fraudulently joined. *Id.* In Long's affidavit, he identified himself as the "territory manager" but, also, denied he had any responsibility for any of the bases of the plaintiff's claims. *Id.* at *5. In particular, Long attested he did not provide the heat console to the plaintiff's employer; his "job duties and responsibilities during th[e relevant] time did not include inspecting, maintaining and/or repairing [the console]"; and he never inspected, maintained, or repaired" the console and was never supposed to do so. *Id.* Long, also, asserted he did not sell, provide, make, build, or construct the heater and he "had no knowledge" of the heat console at issue. *Id.* Finally, Long explained his job duties did not include training or supervising employees about electrical safety (and had never done so). *Id.*

11

The plaintiff did not challenge Long's contentions. *Id.* at *6. Instead, the plaintiff tried to frame it as a merits question; the plaintiff argued Long "was still an employee of the Defendant, with managerial responsibilities," and claimed it "could be possible" he was responsible under the facts alleged. *Id.* This Court rejected that argument and explained the plaintiff "failed to dispute" any aspect of Long's affidavit and assumed "Long was 'somehow involved'" because of his position in the company. *Id.* This Court, also, explained the plaintiff failed to allege Long owed any duty to the plaintiff. *Id.* This Court denied the motion to remand and found "there [was] no reasonable possibility that [the plaintiff] can establish a cause of action." *Id.*

Much like the plaintiff in *Sellers*, Plaintiffs do not dispute any aspect of the Slinkard Declaration "that he had nothing to do with the [incident] at issue in this litigation." *See id.* at *6. Instead, Plaintiffs claim "Slinkard was the site director at the BASF McIntosh plant," (Doc. 16 at 12), but this is the argument that this Court rejected in *Sellers* when it held a plaintiff cannot assume "that [a defendant] was 'somehow involved' [in an accident] based on his position in the company" when faced with evidence to the contrary. 2013 WL 2635564, at *6. And, like the *Sellers* plaintiff, Plaintiffs did not allege Slinkard owed the decedent any duty. *Id.* Based on the Slinkard Declaration and Plaintiffs' failure to dispute these facts, this Court concludes "that there is no reasonable possibility that [Plaintiffs] can establish a cause of action for negligence or wantonness against [Slinkard] under Alabama law." *See id.*

The Eleventh Circuit's decision in *Legg*, likewise, compels this conclusion. In that case, the plaintiffs brought various claims against a pharmaceutical company and several of its non-diverse sales representatives, but one sales representative attested "he never promoted or sold the drug" at issue and another asserted she did not know of the health risks associated with the drug. 428 F.3d at 1323–24. The *Legg* court held the district court erred when it disregarded the affidavits, which the plaintiffs never disputed. *Id.* In light of this undisputed evidence, the court explained there was no "reasonable possibility" that the plaintiffs could establish a cause of action against the non-diverse defendants.

So, too, here. Slinkard's undisputed testimony shows he was not involved in the details of the work, the specific worksite at issue, or in supervising the workers doing the work on the worksite at issue. Therefore, like the sales representative in *Legg*, there is "no evidence that [he] had anything to do with" this incident. *See id.* at 1324. And because Slinkard was not involved with the demolition of the formulations building, he did not know or have reason to know of any "hazardous condition" that may have arisen during the course of the work. Without any evidence that Slinkard "knew" or "should have known" of any risk, "there is no reasonable possibility that an Alabama court would conclude that [Slinkard] personally breached a duty." *Id.*

Plaintiffs' reliance on both *Hampton v. Georgia-Pacific L.L.C.*, 2011 WL 5037403, at *5–7 (S.D. Ala. Oct. 24, 2011) (DuBose, J.), and *James v. Werner Enterprises, Inc.*, 2015 WL 876492, at *6–7 (S.D. Ala. Mar. 2, 2015) (Granade, J.),

13

is misplaced, as those cases are factually distinguishable. *Hampton* involved a slip and fall action after a visitor was injured in the parking lot of a Georgia-Pacific facility, and the plaintiff alleged the injuries were the result of a dangerous condition that the individual non-diverse defendants, who were employees of Georgia Pacific, allowed to exist on the premises. *Hampton*, 2011 WL 5037403 at *1. The court held there was not a fraudulent joinder because the defendants, who the plaintiff alleged had general safety responsibilities for the premises, did not argue state law did not provide possible claims against the individual non-diverse employees, rather the defendants relied on claims by the employees that they lacked responsibility for the premises at issue. *Id*. at *6–7. But unlike here, the relevant affidavit submitted by the *Hampton* defendants created credibility issues because they disputed who, in fact, controlled the subject premises. *Id*. Indeed, the defendants in *Hampton* did not indicate, identify, or even acknowledge who had responsibility for the general safety of the premises at issue. *Id*. at *5–7. In this case, the undisputed facts show RSI had responsibility over the jobsite and RSI employees supervised and controlled both the premises and the work to be completed there. (Doc. 1 at 121–22). Furthermore, the plaintiff in *Hampton*, unlike the decedent in this case, was neither an employee of an independent contractor who conducted demolition work on a job site, over which the employer had control, nor was she operating in the line and scope of her job as a demolition specialist at the time of her injury. 2011 WL 5037403 at *5–7. Likewise, the hazardous condition that led to the plaintiff's injuries in *Hampton* did not arise

14

during the course and progress of work being done on a jobsite by an independent contractor, as it did in this case. *Id*. Here, the decedent's injuries occurred while he acted in the line and scope of his employment, as an independent contractor, with RSI and the condition that led to his injuries indisputably arose during the progress of his work as a demolition specialist. *Id*. Thus, *Hampton* is not persuasive.

Likewise, *Werner Enterprises* is distinguishable. *Werner Enterprises* involved an accident that was caused by a delivery truck in a business' parking lot that injured the plaintiff, who alleged the manager of the business failed to ensure a safe method for delivering goods onto the premises. 2015 WL 876492 at *1. There, the plaintiff alleged facts to suggest the non-diverse defendant manager was aware of the condition that led to the plaintiff's injuries, which the manager disputed in an affidavit. *Id*. at *8. But there, unlike here, the plaintiff further supported her allegations with an affidavit from a local law enforcement officer who stated he previously warned the manager-defendant about the condition that ultimately caused the plaintiff's injuries. *Id*. Here, unlike in *Werner Enterprises*, Defendants' lack of knowledge of some hazardous condition on the subject premises is not in dispute; it is undisputed the hazard arose during the course of the decedent's work as an independent contractor, (Doc. 1 at 123).

Plaintiffs also rely on *Dickinson v. Terminix Int'l Co.*, 16 F. Supp. 3d 1360 (S.D. Ala. 2014) (Granade, J.), to support their contention that Alabama law provides a potential basis for liability against Slinkard under these facts. In

*Dickinson*, the plaintiff brought an action against Terminix and asserted state tort and contract claims and named an agent of Terminix as an individual, non-diverse defendant.  *Id*.  While this Court held the non-diverse defendant was not fraudulently joined, the plaintiffs there, unlike here, pointed to an applicable state statute that independently imposed a legal duty on persons with similar positions as the individual defendant, which provided the Court with a potential basis for liability under state law.  *Id*. at 1367.  Not so here.

Slinkard's undisputed testimony makes clear his position as Site Director did not include supervisory, safety, or other responsibilities over the demolition activities at the formulations building in the McIntosh plant, all of which were with RSI.  As with the non-diverse individual defendants in *Legg* and *Sellers*, Slinkard had "no involvement" with the incident at issue in Plaintiffs' claims, which forecloses Plaintiffs' ability to establish a cause of action against him.  Slinkard did not train or supervise the decedent, did not supervise or control the demolition, and exercised no role—supervisory or otherwise—in how RSI (an independent third-party contractor) selected or instructed its employees (like the decedent).  In short, Slinkard does more than merely deny liability by saying he did nothing wrong; instead, Slinkard has shown he had no involvement in the alleged injuries—and, as a result, had no duty to the decedent.  This testimony forecloses a claim as a matter of law.  *See Sellers*, 2013 WL 2635564, at *5–6; *Legg*, 428 F.3d at 1323–24.

Although Plaintiffs claim the assertions in the Slinkard Declaration "conflict

16

with the allegations in the Complaint," (Doc. 16 at 3), the declaration is evidence that Plaintiffs have not disputed.  A district court "cannot . . . resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."  *Legg*, 428 F.3d at 1323; *see also Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 2896840, at *5 (S.D. Ala. June 13, 2013) (Granade, J.) ("Since these facts are uncontested by plaintiffs, the court under *Legg v. Wyeth*, cannot then resolve the facts in the plaintiffs' favor based solely on the unsupported allegations and legal conclusions in the complaint.").  Plaintiffs' Complaint contains only conclusory assertions and unsupported allegations, which cannot defeat contrary evidence.

Viewing the evidence in the light most favorable to Plaintiffs, the undersigned concludes there is not a reasonable possibility that Plaintiffs can establish a cause of action for negligence or wantonness against Slinkard under Alabama law.  Based on Slinkard's testimony, the lack of contrary evidence, and the nature of Plaintiffs' claims, the Court finds Slinkard was fraudulently joined to this action.  The Court thus recommends Plaintiffs' Motion to Remand be denied, Defendant Slinkard's Motion to Dismiss be granted, and the claims against Slinkard be dismissed without prejudice.[1]

---

[1] Because the Court finds that the record evidence shows there is no reasonable possibility that Plaintiffs can establish a cause of action against Slinkard, the Court declines to reach BASF and Slinkard's alternative argument that Plaintiffs' complaint fails to state a claim under federal or Alabama law.  (Doc. 19, at 9–14).

17

**Defendant RSI's Motion to Dismiss for Fraudulent Joinder**

Plaintiff LaToya McCants seeks to recover workers' compensation benefits under the Workers' Compensation Act of Alabama. (Doc. 1 at 22–23). RSI argues Ms. McCants does not meet the statutory definition of a partially dependent child and is not entitled to benefits under the statute. Plaintiff LaToya McCants has not opposed RSI's motion, and the Court finds Ms. McCants has no possibility of recovery against RSI in this case, RSI is fraudulently joined, and its citizenship should be disregarded.

As the Court has already explained, a non-diverse defendant is fraudulently joined if "there is no reasonable possibility that [the plaintiffs] can establish a cause of action" against the resident defendant. *See Legg*, 428 F.3d at 1324–25 & n.5. Plaintiff LaToya McCants alleges she is a partial dependent entitled to receive compensation pursuant to Ala. Code § 25-5-60. (Doc. 1 at 18). However, the ability to receive payments as a partial dependent is limited: "[I]n computing and paying compensation to orphans or other children, in all cases, *only those* under 18 years of age *or* those over 18 years of age *who are physically or mentally incapacitated from earning* shall be included." ALA. CODE § 25-5-65 (emphasis added). "The unambiguous intent of this section is that children over the age of 18 are conclusively presumed to be precluded from recovering death benefits." *Jimmy Stein Motor Lines, Inc. v. Griffin*, 643 So. 2d 1388, 1390 (Ala. Civ. App. 1994). This is the case even if the over-eighteen child is dependent on the deceased employee, so long as the child is not physically or mentally incapacitated from earning. *Id*.;

*Banks v. Premier Serv. Co.*, 184 So. 3d 370, 376 (Ala. Civ. App. 2014) (determining an over-eighteen child, who was not physically or mentally incapacitated, was not entitled to death benefits).

Under the plain language of the statute, Plaintiff Latoya McCants would only be potentially eligible to receive workers' compensation benefits if she is either under eighteen or physically, or mentally, incapacitated and, thus, prevented from earning. Plaintiff Latoya McCants is alleged to be over eighteen, and there is no evidence that she is disabled. This forecloses Plaintiff Latoya McCants's claim. The Alabama Workers' Compensation Act does not recognize a claim for partial dependency on behalf of a non-disabled, adult child of the decedent. *Banks*, 184 So. 3d at 376; *Jimmy Stein Motor Lines, Inc.*, 643 So. 2d 1388 at 1390. Plaintiffs have not asserted a viable workers' compensation claim under Alabama law against RSI, and RSI should be dismissed as a fraudulently joined party.

The Court recommends that RSI's Motion to Dismiss for Fraudulent Joinder be granted and Plaintiff Latoya McCants's claim against RSI be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, it is recommended Plaintiffs' Motion to Remand, (Doc. 15), be **DENIED**; Defendant Slinkard's Motion to Dismiss, (Doc. 4), be **GRANTED**, and the claims against Slinkard be **DISMISSED WITHOUT PREJUDICE**; and RSI's Motion to Dismiss for Fraudulent Joinder, (Doc. 8), be **GRANTED** and Plaintiff Latoya McCants's claim against RSI be **DISMISSED**

**WITH PREJUDICE**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 30th day of May 2018.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**
