IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARCUS MCCANTS, a Personal Representative and Administrator of the Estate of KAREY PETTWAY, deceased,** ) ) ) ) | |
| **Plaintiff,** ) ) | **CIVIL ACTION NO. 1:18-00062-JB-C** |
| v. ) ) | |
| **BASF CORPORATION,** ) ) | |
| **Defendant.** ) | |

**ORDER**

Now before the Court is Plaintiff's Motion for Leave to Amend the Complaint ("Motion"). (Doc. 81). Defendant BASF Corporation ("Defendant") filed an opposition to the Motion (Doc. 87), and Plaintiff filed a reply (Doc. 89). The Motion is ripe for disposition. The Court concludes that Plaintiff's Motion is due to be GRANTED for the reasons set out below.

**I.   BACKGROUND**

This action was commenced in the Circuit Court of Mobile County, Alabama, arising out of the death of Karey Pettway.[1] (Doc. 1, Exhibit A). Mr. Pettway was killed while working at the BASF facility in McIntosh, Alabama pursuant to a contract between BASF and Mr. Pettway's employer, Remedial Services, Inc. ("RSI"). He sustained fatal injuries on November 7, 2017 while he and other RSI employees were engaged in the demolition of a "formulations building" at Defendant's facility.

---

[1] *McCants, et al. v. BASF*, et al., Circuit Court of Mobile County (02-CV-2018-900088.00).

1

Plaintiff Marcus McCants, as Personal Representative and Administrator of the Estate of Mr. Pettway, asserted claims against Defendant, Defendant's site manager Jason Slinkard, and numerous fictitious defendants described as follows:

> 1 - 20:  the person(s), firm(s) or corporation(s) who designed, manufactured, assembled, tested, inspected, installed, serviced, maintained, operated and/or controlled the industrial plant and/or machinery that contributed to injuring Karey Pettway at the times made the basis of this suit;
>
> 21 - 40:  the person(s), firm(s) or corporation(s) who was or were the principal, master, or employer of the individuals who designed, manufactured, assembled, tested, inspected, installed, serviced, maintained, operated and/or controlled the industrial plant and/or machinery that contributed to injuring Karey Pettway at the times made the basis of this suit;
>
> 41 - 60:  the person(s), firm(s) or corporation(s) who negligently and/or wantonly trained, educated, supervised and/or monitored those person(s), firm(s) or corporation(s) who designed, manufactured, assembled, tested, inspected, installed, serviced, maintained, operated and/or controlled the industrial plant and/or machinery that contributed to injuring Karey Pettway at the times made the basis of this suit;
>
> 61 - 80:  the person(s), firm(s) or corporation(s) responsible for and who did in fact assist or contribute in any way to the tortious conduct made the basis of this suit; all of whose true names and legal identities are otherwise unknown to the Plaintiff but who will be substituted by amendment when ascertained, separately and severally.

(Doc. 1, Exhibit A).  Plaintiff LaToya McCants asserted a claim against RSI under the Alabama Workers Compensation Act as Mr. Pettway's partially dependent child.

On February 8, 2018, Defendant filed its Notice of Removal and Answer in this Court. (Doc. 1).  Defendant, a citizen of Delaware and New Jersey, alleged complete diversity between it and Plaintiffs, who are Alabama citizens.[2]  Defendant alleged that Defendants Slinkard and RSI, both Alabama citizens, had been fraudulently joined and that their citizenships were to be

---

[2] Defendant also alleged the requisite amount in controversy in excess of $75,000.

disregarded in assessing diversity jurisdiction. Defendant also argued that Plaintiff LaToya McCants' claim against RSI was mis-joined and therefore due to be severed and remanded.

On March 8, 2018, Plaintiffs filed a motion to remand, arguing that Defendant Slinkard had not been fraudulently joined and that his Alabama citizenship destroyed diversity. (Doc. 15). The Magistrate Judge disagreed and entered a Report and Recommendation on May 30, 2018 that Plaintiffs' motion to remand be denied. (Doc. 39). Plaintiffs filed objections to the Report and Recommendation, followed by Defendant's response and Plaintiffs' reply. (Docs. 40, 44 and 45).

This action was transferred to the undersigned's docket on August 13, 2018. On February 12, 2019, Plaintiffs filed a motion for hearing, which the Court conducted on March 15, 2019. By order dated March 20, 2019 (Doc. 51), the Court partially adopted the Report and Recommendation and denied Plaintiff's motion to remand. The Court determined that Defendant Slinkard had been fraudulently joined and dismissed the claims against him. Plaintiff LaToya McCants' claim against RSI was severed and remanded. This action has since proceeded solely on Plaintiff Marcus McCants' claims against Defendant.

Pursuant to a scheduling order entered on April 25, 2019 (Doc. 58), the parties served initial disclosures on May 15, 2019. (Docs. 66 and 67). Plaintiff had also propounded discovery to Defendant with the Complaint filed in January 2018, which requested information concerning Hargrove Engineers & Contractors and/or Hargrove & Associates, Inc. and the work being performed at Defendant's facility the time of Mr. Pettway's fatal injury. Defendant had not answered Plaintiff's discovery by the time it served its initial disclosures in May 2019.

On June 10, 2019, Plaintiff filed the subject Motion seeking to join Hargrove & Associates, Inc. ("Hargrove") as a defendant. (Doc. 81). Hargrove is an Alabama corporation. Its joinder would destroy the Court's subject matter jurisdiction of this action.

## II.   ANALYSIS

### A.   28 U.S.C. § 1447(e) governs Plaintiff's Motion:

As the joinder of Hargrove would deprive the Court of diversity jurisdiction, the parties correctly note that 28 U.S.C. § 1447(e), not Rule 15(a), governs Plaintiff's Motion. *LaFitte v. Allstate Ins. Co.*, 2008 WL 11411824 at *2 (S.D. Ala. February 6, 2008)("where a plaintiff seeks to amend the complaint to assert claims against new defendants who would destroy the court's subject matter jurisdiction, the court … must apply the standard detailed in 28 U.S.C. § 1447(e)" rather than Rule 15(a)). *See also*, *Mask v. Strategic Rest. Acquisition Co.*, 2017 U.S. Dist. LEXIS 193838 at * 4 (S.D. Ala. November, 21, 2017) (citing *Starnes Davis Florie, LLP v. GOS Operator, LLC*, 2012 U.S. Dist. LEXIS 126701 (S.D. Ala. September 5, 2012)(citing *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998)). Section 1447(e) states that if "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." The Court therefore must either (1) deny joinder of Hargrove and retain jurisdiction, or (2) permit joinder of Hargrove and remand the action to the Mobile County Circuit Court. The determination of which option is more appropriate is left to this Court's discretion. *GOS Operator, LLC*, 2012 U.S. Dist. LEXIS 126701 at * 3 ("The determination of which of these options is more appropriate in a particular case 'is left to the discretion of the district court.'")(quoting *Fontainebleau Gardens Condo. Ass'n, Inc. v. Pacific Ins. Co.*, 768 F. Supp 2d 1271 (S.D. Fla. 2011)).

B.  **The four (4) *Hensgens* factors:**

The Court's exercise of discretion under § 1447(e) is guided by four factors: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." *GOS Operator, LLC*, 2012 U.S. Dist. LEXIS 126701 at *3; *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The "framework" of the four "*Hensgens*" factors "is designed to facilitate the balancing of the defendant's interest in maintaining a federal forum with the competing interest disfavoring parallel lawsuits in federal and state courts." *Holiday Isle, LLC v. Clarion Mortg. Capital, Inc.*, 2008 U.S. Dist. LEXIS 30561 at *2 (S.D. Ala. April 11, 2008).[3]

1.  **The extent to which the purpose of the amendment is to defeat federal jurisdiction.[4]**

Defendant's arguments relevant to the first factor include its contention that Plaintiff's proposed negligence and wantonness claims against Hargrove are futile. (Doc. 87 at I.A.). According to Defendant, even assuming Hargrove was negligent or wanton in the manner Plaintiff alleges, Plaintiff cannot overcome Defendant's affirmative defenses of intervening cause,

---

[3] See *Godwin v. Nat'l Union Fire Ins. Co. of Pittsburg, Inc.*, 2006 U.S. Dist. LEXIS 90907 at n.3 ("*Hensgens* predates § 1447(e). However, courts continue to apply the *Hensgens* factors, and some courts have determined that § 1447(e) is a codification of the holding of *Hensgens*. *See Cobb v. Delta Exports*, 186 F.3d 675, 677 n.4 (5th Cir. 1999)).

[4] Defendant argues that, in addition to the four (4) *Hensgens* factors, a fifth factor applies to Plaintiff's amendment, namely whether Plaintiff's proposed claims against Hargrove are meritless. (Doc. 87 at I.A.). Defendant points to the court's statement in *LaFitte*, that "[a]n additional factor in the analysis of whether a plaintiff's purpose in adding a non-diverse defendant is to defeat subject matter jurisdiction is a consideration of the relative merits or strength of the plaintiff's claim against the diversity destroying defendant." 2008 WL 11411824 at *2. However, whether "a plaintiff's purpose in adding a non-diverse defendant is to defeat subject matter jurisdiction" is the first of the four *Hensgens* factors, and the court's statement in *LaFitte* is simply that the "relative merits or strength of the plaintiff's claim" should be a part of the consideration of that first factor. Defendant's arguments concerning the merits of Plaintiff's claim are considered as a part of the Court's analysis of the first *Hensgens* factor regarding Plaintiff's purpose in seeking to add Hargrove.

5

contributory negligence, and assumption of the risk.  (*Id.*).  Defendant's arguments, however, are not supported by the cases it cites.

*LaFitte v. Allstate Ins. Co.,* for example, was an action against an insurance company in which the plaintiff sought to join a non-diverse individual agent after the court had dismissed identically situated defendants.  Dismissal was based on "well settled" Alabama law that "agents cannot be held liable for a principal's breach of contract."  *LaFitte*, 2008 WL 11411824 at *3.  The proposed claim in *LaFitte* was patently futile because it sought "to impute individual liability to [the agent] in his capacity as an agent [of the insurance company defendant]."  *Id.* (noting plaintiff's proposed negligence claim against the agent likewise would "necessarily fail for … reasons previously articulated by the Court in dismissing the claims against the [similarly situated] original individual defendants.").  Looking to the proposed allegations against the agent, the court in *LaFitte* found them "insufficient under Alabama law to state a cause of action sounding in either breach of contract or negligence."  *Id.*  The facts in *LaFitte* are materially distinguishable from those presented by Plaintiff's Motion.  Plaintiff's proposed allegations against Hargrove are not insufficient under Alabama law to state a cause of action.  Plaintiff's proposed allegations, unlike those in *LaFitte*, do not run afoul of well settled Alabama law on their face.

Moreover, Defendant's opposition is based on its affirmative defenses, not on Plaintiff's proposed allegations.  As Plaintiff aptly notes, Defendant's affirmative defenses present factual questions subject to discovery that has not yet been conducted, and such defenses are typically not suited for summary disposition. (Doc. 89 at 2 - 4).  Unlike *LaFitte*, this Court has not dismissed any party or claim based on Defendant's affirmative defenses.  The Defendant contends that Plaintiff's claims fail against Hargrove for the same reasons they fail against Defendant (Doc. 87

6

at 5), but the Court has made no determination regarding the merits of Plaintiff's claims against Defendant or of its affirmative defenses, nor will it do so in this context.

The opinion in *Johnson v. GMC*, 82 F. Supp. 2d 1326 (S.D. Ala. 1997) is similarly unhelpful to Defendant. *Johnson* was a product liability action filed against the manufacturer and seller of a used automobile. *Id.* at 1330. Following removal, Plaintiff filed a motion to join the non-diverse "original seller." *Id.* The court first concluded that the claims against the used seller failed based on facts conceded by plaintiff and deficiencies in plaintiff's allegations which established the lack of causation as a matter of law. *Id.* at 1327 - 1330. The court found that plaintiff's proposed claims against the original seller failed for the same reasons that plaintiff's claims against the used seller failed. Here, unlike *Johnson*, neither factual concessions nor deficient allegations render Plaintiff's proposed claim against Hargrove futile. Neither does the record contain conceded facts or pleading deficiencies which establish Defendant's affirmative defenses as a matter of law.

Defendant also contends that Plaintiff's purpose to avoid federal jurisdiction is apparent from the fact that Plaintiff knew Hargrove's *identity* prior to removal. (Doc. 87 at 7). Defendant faults Plaintiff too for having known the *identify* of Hargrove, but "apparently" failing "to take even basic steps to investigate what role Hargrove played or his potential claim against Hargrove." (*Id.*) Defendant argues that Plaintiff could have submitted a Freedom of Information Act request to OSHA, which Defendant believes would have produced the statements that Plaintiff now relies on to support his Motion. *Id.* at 8. The Court is unpersuaded by this argument. First, knowledge of the *identity* of a non-diverse entity without corresponding knowledge of such entity's *role or extent of involvement* in the incident giving rise to suit does not necessarily imply

7

an intent to avoid federal jurisdiction.  In *Mask v. Strategic Rest. Acquisition Co., LLC*, this Court concluded that reports bearing the *identity* of a non-diverse party did not weigh against plaintiff's motion to join that party after removal.  2017 U.S. Dist. LEXIS 193838 at * 6 - 7 (S.D. Ala. November 21, 2017).  Although the reports stated the non-diverse party's identity, they did not indicate his role or extent of involvement in the underlying incident.  *Id.* at *7 ("There is no indication on these reports as to the position [the non-diverse party] held at [the subject facility] or whether she was present there on the date of the subject incident.").  Indeed, in light of defendant's premise that the plaintiff knew the non-diverse party's identity and her role and extent of involvement before removal, the Court found defendant's argument "perplexing":

> [Defendant's] argument is, in fact, perplexing. If, as [defendant] contends, Plaintiff knew [the non-diverse party's] identity and her possible role in the subject incident at the time he filed the complaint, the safest way for him to prevent removal was simply to name her in the original complaint, not wait until after removal and hope for remand. Rather, in the circumstances of this case, the fact that [the non-diverse party] was added in a post-removal amendment suggests that even if Plaintiff knew her name, he did not know the extent of her involvement at the time the complaint was filed. The Court finds that this factor weighs in favor of Plaintiff.

*Id.* at * 7 - 8.

As for Defendant's argument that Plaintiff "apparently" failed to take even basic steps to investigate Hargrove's *role*, including a public records request to OSHA, the Court is unpersuaded by the attempt to distinguish *Johnson v. Dirt Cheap, LLC*, 2015 U.S. Dist. LEXIS 174404 (S.D. Ala. November 13, 2015).  While the parties in *Johnson* disputed whether the plaintiff knew the "identity" of the non-diverse party, the Court rejected the defendant's arguments regarding the plaintiff's ability and obligation to discover it.  The Court distinguished cases cited by the defendant, in which a court found that a party's *identity* could have been discovered earlier.  *Id.*

8

at *11. In those cases, unlike this case and *Johnson*, the plaintiff either had access to completed discovery concerning the non-diverse party conducted in a prior lawsuit (*Smith v. White Consolidated Industries, Inc.*, 229 F. Supp. 2d 1275 (N.D. Ala. 2002)) or knew of a non-diverse physician who inserted a breast implant into her (*Selma v. Wyeth-Ayerst Labs,* 898 F. Supp. 429 (E.D. Tex. 1995)). Plaintiff here was not afforded access to completed discovery concerning Hargrove prior to removal. Neither was Plaintiff's decedent in anything resembling a physician-patient relationship with Hargrove. And, Plaintiff's decedent could not have informed Plaintiff of Hargrove's role (even if he knew it).

Regarding Plaintiff's opportunity to ascertain information about Hargrove, Plaintiff propounded discovery to Defendant prior to removal and did so with the filing of the Complaint in the Mobile County Circuit Court on January 10, 2018. Plaintiff's discovery addressed Hargrove and the work being performed at Defendant's facility both before and after the Mr. Pettway's fatal injury. (Doc. 1 at 42, 43). Plaintiff requested Defendant to produce documents exchanged between it and Hargrove relating to the work being performed at Defendant's facility at the time of the injury. Plaintiff also requested Defendant to identify Hargrove employees present at Defendant's site when Mr. Pettway was injured. Defendant had not answered Plaintiff's discovery when it served its initial disclosures in May 2019. Plaintiff's Motion to join Hargrove is based on Defendant's initial disclosures. The Motion was filed less than 30 days after Plaintiff's receipt of them. *See Johnson*, 2015 U.S. Dist. LEXIS 174404 at *15 (rejecting defendant's contention that plaintiff could have "followed up on any tardy discovery responses, filed a motion to compel, researched public records," and noting, "the reason the Plaintiff did not have Pippen's

information prior to removal is because the Defendants removed the case before disclosing that information to the Plaintiff through discovery.").

Finally, Defendant disparages Plaintiff's fictitious party allegations, which "could potentially" encompass Hargrove, as "of no moment." (Doc. 87 at 8). Defendant relies on Charter *Oak Fire Ins. Co. v. Davis*, 2012 WL 6923592 at *6 (N.D. Ala. Dec. 7, 2012), but that reliance is misplaced. As articulated in Plaintiff's Reply (Doc. 89), the plaintiff in *Davis* (unlike Plaintiff here) offered no new discovery after removal to explain its motion for joinder. Further, fictitious party allegations have been held by this Court to be more significant than Defendant's opposition suggests. For example, in *Johnson*, the defendant described plaintiff's fictitious party allegations as "nothing more than standard protocol" that did not "evidence an effort to identify and name" the non-diverse defendant plaintiff sought to join. *Johnson*, 2015 U.S. Dist. LEXIS 174404 at *9. The Court, however, disagreed with defendant's characterization, noting that plaintiff had identified "entities and/or persons who or which negligently and/or wantonly supervised any agents, servants, and/or employees where such supervision was directly or indirectly related to the Plaintiff's injuries" and "entities and/or persons who or which were responsible for the management and/or maintenance of" defendant's facility. *Id*. at *10. These descriptions were found by the Court to be a "manifestation of what the Plaintiff's intent has been since the inception of this lawsuit: to sue not only the entities that operated [the facility], but also the manager and/or supervisor whose responsibility it was to ensure that the [facility] was clear of hidden hazards." *Id.* at *10 – 11. This Court finds that Plaintiff's fictitious party allegations similarly manifest Plaintiff's intention from the inception of this suit: to sue all persons and entities who controlled the facility or the machinery that contributed to Plaintiff's decedent's

death or who assisted or contributed in any to the underlying alleged conduct. As noted in Plaintiff's Reply, Defendant's Response does not attempt to refute that Hargrove was involved in the demolition project at its facility during which Plaintiff's decedent was fatally injured.

The Court concludes that the first *Hensgens* factor weighs in favor of Plaintiff's Motion.

### 2. Whether the plaintiff has been dilatory in asking for the amendment.

Defendant cites only *Sexton v. G&K Servs., Inc.*, 51 F. Supp. 2d 1311 (M.D. Ala. 1999) in support of its argument on the second *Hensgens* factor, noting simply that the court there found a plaintiff to have been dilatory in seeking to amend a complaint when plaintiff could have ascertained the identity of the non-diverse party prior to filing suit and to removal. The Court finds this argument unpersuasive for the reasons set out in its analysis of the first *Hensgens* factor above. (Section II.B.1., *supra*). Additionally, the Court notes that the plaintiff in *Sexton* not only knew the non-diverse party's identity prior to filing suit, but *conceded* that he failed to "require discovery to confirm the proper identity of the resident defendant." 51 F. Supp. 2d at 1314. The Court's conclusion in *Sexton* that plaintiff had been dilatory was based on this concession, as well as the Court's suspicion of plaintiff's claim that he misread the non-diverse party's name which appeared clearly on a contract in plaintiff's possession. The plaintiff's conduct in *Sexton* is not analogous to Plaintiff's conduct in this case. *Sexton* does not support Defendant's argument.

The focus of Defendant's argument that Plaintiff has been dilatory is Plaintiff's failure to submit a FOIA request to OSHA. (Doc. 87 at 9, 10). Defendant notes that it provided the subject documents to Plaintiff "upon its first obligation to do so," but it appears that Defendant's argument assumes, without elaboration, that a FOIA request to OSHA would have (1) produced complete copies of the documents already in Defendant's possession, and (2) that OSHA would

11

have responded to a FOIA request prior to Defendant's service of initial disclosures and its answers to Plaintiff's discovery. Under the circumstances, including Plaintiff's service of discovery prior to removal and the filing of Plaintiff's Motion within 30 days of receiving the documents concerning Hargrove's involvement, the Court is disinclined to find Plaintiff to have been dilatory solely based on a failure to pursue a FOIA request.[5]

The Court also notes that Plaintiff's Motion was filed within the time allotted in the Scheduling Order to join additional parties. (Doc. 58 at 5). In *Jones v. Rent-A-Ctr. E., Inc.*, the Court found that a plaintiff had not been dilatory in seeking to join a non-diverse party when the motion to do so was filed within the time allowed by the Scheduling Order for joining additional parties. 356 F.Supp. 2d 1273, 1276 (M.D. Ala. 2005).

The Court concludes that the second *Hensgens* factor weighs in favor of Plaintiff's Motion.

### 3. Whether the plaintiff will be significantly injured if the amendment is not allowed.

Defendant first argues that Plaintiff will not be significantly injured by repeating its argument that Plaintiff's claims against Hargrove are futile. (Doc. 87 at 10). The Court rejects that argument for the reasons set out in Section II.B.1. above.

Defendant also contends, and the Court is inclined to agree, that this action can proceed without Hargrove, that Plaintiff would have access to discovery from Hargrove without its joinder, and that Plaintiff could obtain a judgment against it without the presence of Hargrove

---

[5] Plaintiff further contends that Defendant's attempt to cast Plaintiff as dilatory is undermined by Defendant's repeated representations in filings and to the Magistrate Judge that RSI was soley responsible for the demolition, without any reference to Hargrove. (Doc. 81 at 11, and Doc. 89 at 6 – 8). Defendant responds that it made no mention of Hargrove for the "good reason" that it relied on RSI for the demolition. (Doc. at p. 10). The Court, however, notes from Defendant's May 2019 initial disclosures, highlighted by Plaintiff, that RSI understood that it was under the direction of Hargrove for at least some aspects of the demolition at Defendant's facility. (Doc. 82-1 at 2 and 7).

because there has been no suggestion that it (Defendant) would be unable to satisfy a judgment. The Court notes that Plaintiff has not responded to this argument, including that it would be able to secure a full judgment against Defendant. The Plaintiff does argue, however, that it will be injured if joinder of Hargrove is not permitted, because plaintiff will have to pursue its claims against Defendant in this Court and its claims against Hargrove in state court. (Doc. 89).[6] Plaintiff also predicts that each Defendant would invoke the "empty chair" defense in the respective actions. *Id.* Plaintiff's arguments here are well taken; a consequence of requiring parallel actions to be pursued in federal and state court is a waste of judicial resources, and it has been found to weigh in favor of joinder. *Taylor v. Ala. CVS Pharm., LLC*, 2017 U.S. Dist. LEXIS 109425 at *20 - 21 (N.D. Ala. July 14, 2017)("While it is true that the defendant's right to seek a federal forum by removal must be weighed, so too the plaintiff's interest in avoiding duplicate litigation in separate fora."). *See also Shanks v. Globe Metallurgical, Inc.*, 390 F. Supp. 3d 1323 (S.D. Ala. 2019).[7]

The Court concludes that the third *Hensgens* factor, on balance, is neutral in terms of Plaintiff's Motion.

### 4. Any other factors bearing on the equities.

---

[6] The Court is mindful that the *Hensgens* factors balance the Defendant's interest in a federal forum against the "the competing interest disfavoring parallel lawsuits in federal and state courts." *Holiday Isle, LLC v. Clarion Mortg. Capital, Inc.*, 2008 U.S. Dist. LEXIS 30561 at *2 (S.D. Ala. April 11, 2008).

[7] In its consideration of the third *Hensgens* factor in *Shanks*, which also involved a death, this Court reasoned:

> While it is true that a defendant's right to seek a federal forum by removal bears some weight, so too does the plaintiff's interest in avoiding duplicate litigation in two separate courts. If Plaintiffs were not allowed to amend their complaint to add the individual co-employee defendants, they would have to continue to litigate their action [against diverse parties] in this Court and would have to bring their claims [against non-diverse parties in state court]. Under this scenario, many of the same factual and legal questions would be contested in two separate courts, wasting precious judicial resources and increasing the cost of the litigation for all parties. In addition to having to bear the costs of separate litigation to pursue their claims, Plaintiffs could potentially have to sit through two separate trials concerning the death of their loved one. 390 F. Supp. 3d at 1338.

Defendant argues that the equities weighs in its favor, first citing *Smith* for the proposition that,

> in balancing the equities, the parties do not start out on an equal footing. This is because of the diverse defendant's right to choose between a state or federal forum. Giving diverse defendants the option of choosing the federal forum is the very purpose of the removal statutes.

229 F. Supp. 2d at 1282.  (Doc. 87 at 12).  At the same time, however, that first footing does not pretermit consideration of competing equities.  The Court finds this case to be analogous to *Shanks* in terms of considerations material to this fourth *Hensgens* factor.  This Court in *Shanks* stated:

> 'Little effort will have been wasted in this case if it is returned to state court, whereas failing to remand it will result in double litigation.' *Taylor v. Ala. CVS Pharm., LLC*, Case No. 7:16-cv-1827-TMP, 2017 U.S. Dist. LEXIS 109425, 2017 WL 3009695, at *9 (N.D. Ala. July 14, 2017). . . . The expense, inconvenience, and inefficiency of forcing Plaintiffs to maintain separate, parallel suits in two different courts, as well as the doubling of the expenditure of judicial resources favor allowing the amendment. Thus, the Court concludes that the equities in this case favor allowing Plaintiffs to join the non-diverse defendants under § 1447(e). *See Adams,* 2017 U.S. Dist. LEXIS 71693, 2017 WL 1828908, at *4-5.

390 F. Supp. 3d at 1338.  These considerations apply to this case as well.  There has been no formal discovery taken.  To the extent that the parties have discussed discovery going forward among themselves and with the Magistrate Judge, that work should be beneficial to the parties and the process in state court.  Defendant's work in preparing a Motion for Summary Judgment in this Court also will not be lost in its defense of this claim in state court.

The Court concludes that the fourth *Hensgens* factor weighs in favor of Plaintiff's Motion.

## III.    CONCLUSION

For the foregoing reasons, the Court orders that Plaintiff's Motion for Leave to Amend the Complaint (Doc. 81) is GRANTED.  Plaintiff shall file the Amended Complaint not later than November 4, 2019.

**DONE and ORDERED** this 31st day of October, 2019.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE